**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANTONIO CESAR FUENTES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Civil Action No. 25-1387 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Antonio Cesar Fuentes, filed this civil action against the defendant, the United States of America, Complaint ("Compl.") at 1, ECF No. 1, on November 25, 2024, id., seeking to recover $90,000, plus interest, which he alleges that he paid as a civil tax penalty to the Internal Revenue Service ("IRS") for tax year 2010, id. On April 21, 2025, the IRS abated the tax penalty that it had previously assessed against the plaintiff, refunded his money, and released a federal tax lien it had imposed against him. Plaintiff's Motion to Voluntarily Dismiss the Complaint Without Prejudice ("Pl.'s Mot. to Dismiss Compl.") at 2, ECF No. 20. The defendant, however, claims that the refund was issued in error and filed counterclaims against the plaintiff to recover the refund and to obtain a judgment that the plaintiff is liable for additional civil tax penalties for tax years 2011, 2012, and 2015. First Amended Answer and Counterclaim ("Am. Counterclaim") at 15, 17, ECF No. 18.

Currently pending before the Court are (1) the Plaintiff's Motion to Voluntarily Dismiss the Complaint Without Prejudice; (2) the Plaintiff's Motion to Dismiss the United States' First Amended Counterclaim for Improper Venue or, in the Alternative, to Transfer Venue ("Pl.'s Mot. to Dismiss or Transfer Counterclaim"), ECF No. 21; and (3) the Plaintiff's Motion to

Dismiss the United States' First Amended Counterclaim for Lack of Subject Matter Juris[dic]tion ("Pl.'s Mot. to Dismiss Counterclaim for Lack of Jurisdiction"), ECF No. 22. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant the plaintiff's motion to voluntarily dismiss his Complaint without prejudice, deny the plaintiff's motion to dismiss the defendant's counterclaims for lack of subject matter jurisdiction, deny the plaintiff's motion to dismiss the defendant's counterclaims for improper venue, and grant the plaintiff's motion to transfer venue.

## I. BACKGROUND

### A. Factual Background

The plaintiff "is a citizen of the United States[,]" Compl. ¶ 6, but he has "never owned a home in the United States" and he has "always lived in Mexico[,]" id. ¶ 9. He alleges that "during the years 2010–2015, [he] received a gift of $25,000 from [his] father every month[,]" which amounts to over $100,000 in foreign gifts each year. Compl., Exhibit ("Ex.") 1 (Letter from John Leeper, Representing Antonio C. Fuentes, to the Internal Revenue Service (Dec. 16, 2022) ("Leeper Letter")) at 3, ECF No. 1-1; see Compl. ¶ 7. United States persons are required to report the value of foreign gifts through the submission of a Form 3520 (Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts), if the annual

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the defendant's Response to Plaintiff/Counter-Defendant's Motion to Dismiss Counterclaim for Lack of Jurisdiction (Mootness) With Prejudice ("Def.'s Opp'n to Mot. to Dismiss Counterclaim for Lack of Jurisdiction"), ECF No. 23; the defendant's Response to Plaintiff's Motion to Voluntarily Dismiss the Complaint Without Prejudice ("Def.'s Opp'n to Mot. to Dismiss Compl."), ECF No. 24; the defendant's Response to Plaintiff/Counter-Defendant's Motion to Dismiss the United States' First Amended [sic] or, in the Alternative, to Transfer Venue, ("Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim"), ECF No. 25; the plaintiff's Reply to the United States' Response to Plaintiff's Motion to Voluntarily Dismiss the Complaint Without Prejudice ("Pl.'s Reply to Opp'n to Dismiss Compl."), ECF No. 26; the plaintiff's Reply to the United States' Response to Plaintiff/Counter-Defendant's Motion to Dismiss the United States' First Amended Counterclaim for Improper Venue or, in the Alternative, to Transfer Venue ("Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim"), ECF No. 27; and the plaintiff's Reply to the United States' Response to Plaintiff/Counter-Defendant's Motion to Dismiss the United States' First Amended Counterclaim for Lack of Jurisdiction ("Pl.'s Reply to Opp'n to Dismiss Counterclaim for Lack of Jurisdiction"), ECF No. 28.

value of such gifts exceeds $100,000. IRS Notice 97-34, 1997-1 C.B. 422, § VI(B)(1). The plaintiff employed Alfonso Soto, an attorney and tax specialist with an office in El Paso, Texas, to prepare his "U.S. income tax returns and other forms . . . for the years 2010[–]2015." Leeper Letter at 4. The plaintiff alleges that he "told Soto about the gifts [he] received each month from his father[,]" and that he "relied, in good faith, on Soto to prepare all required forms and to include all required schedules[,]" but that "Soto did not include Form 3520" with his 2010, 2011, 2012, and 2015 tax returns. Compl. ¶¶ 18–25; Leeper Letter at 3.

On August 22, 2017, the IRS informed the plaintiff that he was required to file a Form 3520 for each of the years 2010, 2011, 2012, and 2015. Compl., Ex. 4 (Letter from Chandra D. Powell, Small Business and Self-Employed Group Leader, Internal Revenue Service, to Antonio C. Fuentes (Aug. 22, 2017) ("Powell Letter")) at 1–2, ECF No. 1-4. The plaintiff subsequently filed the required forms with the assistance of Mr. Soto. Compl., Ex. 5 (Letter from Alfonso Soto, Representing Antonio C. Fuentes, to Jonathan Meek, Revenue Agent, Internal Revenue Service ("Soto Letter")) at 1, ECF No. 1-5. The IRS then assessed a penalty of $90,000 against the plaintiff for his failure to timely file Form 3520 for the 2010 tax year. Compl. ¶¶ 28–30. The plaintiff paid the $90,000 penalty, with interest, in December 2022, but believing that his good faith reliance on Mr. Soto's advice should exempt him from the penalty, see id. ¶¶ 25, 43, 48, he submitted a Claim for Refund on December 16, 2022, id. ¶ 31. The IRS denied the plaintiff's request for a refund on January 16, 2024. Id. ¶ 32. The plaintiff then submitted an amended Claim for Refund on March 6, 2024, that "raise[d] an additional ground for recovery that was not raised in his original [Claim for Refund][,]" specifically a 2023 Tax Court decision that the plaintiff alleges entitled him to a refund. Id. ¶ 33. After more than six months elapsed without a response to his amended Claim for Refund, the plaintiff filed this lawsuit alleging that his failure

to timely report his father's gifts "was due to reasonable cause and not willful neglect[,]" id. ¶ 47, and he therefore should not have to pay the penalty.

**B. Procedural Background**

On November 25, 2024, the plaintiff filed a Complaint in the Western District of Texas. Id. at 1. On February 28, 2025, the defendant moved to transfer venue from the Western District of Texas to the District of Columbia. United States' Motion to Transfer Venue, or, in the Alternative, to Dismiss for Improper Venue at 1, ECF No. 5. On May 6, 2025, United States District Judge Kathleen Cardone granted the defendant's motion because "[p]enalty refund suits must be filed in the 'judicial district where the plaintiff resides' [under] 28. U.S.C. § 1402[,]" Order (May 6, 2025) at 3, ECF No. 11, and for purposes of § 1402, the plaintiff must "be treated as residing in the District of Columbia" because he is "a citizen or resident of the United States [who] does not reside in (and is not found in) any United States judicial district." Id. (citing 26 U.S.C. § 7701(a)(39)(A)). On April 21, 2025, the IRS "abated the penalty assessed for 2010, refunded [the p]laintiff's money[,] and released the federal tax lien." Pl.'s Mot. to Dismiss Compl. ¶ 7. The case was subsequently transferred to this Court on May 7, 2025. See generally Minute ("Min.") Entry (May 7, 2025), ECF No. 12.

On May 13, 2025, the defendant filed its answer and counterclaims, see generally Defendant's Answer and Counterclaim, ECF No. 13, and then on August 19, 2025, the defendant filed an amended answer and counterclaims, see generally Am. Counterclaim. According to the defendant, the plaintiff was not entitled to the refund he received. See Am. Counterclaim ¶¶ 3–13. The defendant claims that the IRS "referred the . . . civil tax penalty issues to the United States' Department of Justice in January 2025 for defense of [the plaintiff's] refund claim for 2010 and for prosecution of counterclaims to reduce the unpaid assessments for 2011, 2012, and

2015 to judgment." Id. ¶ 12. The defendant argues that, after this referral, the IRS no longer had authority over the plaintiff's tax claims and, therefore, could not abate the penalty. See id. ¶¶ 12–13. The defendant also alleges in its counterclaim that on June 11, 2018, the IRS assessed additional penalties against the plaintiff for failing to report foreign gifts from his father in tax years 2011, 2012, and 2015. Id. ¶¶ 3–13. But according to the defendant, the IRS also erroneously abated these tax penalties on April 21, 2025. Id. ¶¶ 13, 20. The defendant's counterclaims therefore seek to "reduce the unpaid assessments for 2011, 2012, and 2015 to [a] judgment" totaling $290,786.02, id. ¶ 12, and to recover a "total erroneous refund amount [of] $174,797.20" for tax years 2012 and 2015, id. ¶ 20.

On September 5, 2025, the plaintiff, after receiving the relief he sought when the IRS abated the penalties and released the tax liens against him, moved to voluntarily dismiss his complaint without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Pl.'s Mot. to Dismiss Compl. at 1, ¶¶ 7–10. The defendant filed an opposition to the plaintiff's motion to dismiss on September 17, 2025, in which it argues that the plaintiff "has not sought his dismissal in good faith" and is "engaged in forum shopping." Def.'s Opp'n to Mot. to Dismiss Compl. at 2, 3. The defendant further contends that dismissal would be prejudicial because it "would give credence that the IRS's actions were in fact legally done, when they were not." Id. at 4. The plaintiff filed an opposition on September 19, 2025, arguing that the IRS's refund and release of tax lien rendered his complaint moot. See Pl.'s Reply to Opp'n to Dismiss Compl. at 1.

On September 8, 2025, the plaintiff filed another motion to dismiss, arguing that the defendant's counterclaims should be dismissed for improper venue, or alternatively be transferred back to the Western District of Texas. Pl.'s Mot. to Dismiss or Transfer

Counterclaim at 1. The plaintiff alleges that, "[u]nder the venue statute governing [the counterclaims], venue is not proper in the District of Columbia[,]" id. at 5, that the "[c]ounterclaim could have been brought in the Western District of Texas[,]" id. at 6, and that "a transfer to the Western District of Texas would be in the interest of justice[,]" id. at 7. The defendant filed an opposition to this motion on September 17, 2025, arguing (1) that the plaintiff "waived an improper venue argument through delay and conduct"; (2) that "the District of Columbia is the only proper venue" because venue is only granted for the plaintiff's original claim in the District of Columbia; and (3) that even if the plaintiff's claim is dismissed, the District of Columbia remains a proper venue and "[t]he private and public interests weigh against transferring" the case to any other proper venue. Def.'s Opp'n to Mot. To Dismiss or Transfer Counterclaim at 1. The plaintiff replied to the defendant's opposition on September 23, 2025, arguing (1) that the counterclaim "is the relevant pleading" for venue purposes once the plaintiff's claim is dismissed, Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 2, (2) that "venue for the [counterclaim] is not proper in the District of Columbia[,]" id. at 3, and (3) that the Western District of Texas is a proper venue and that the case should be transferred to that District, id. at 9.

On September 9, the plaintiff moved to dismiss the defendant's counterclaims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Pl.'s Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 1. As grounds for his motion, the plaintiff alleges that the defendant's counterclaims are moot or collaterally estopped by the IRS's abatements. Id. at 2–3. The defendant filed an opposition on September 17, 2025, arguing that "the IRS's subsequent 'abatements'—made after referral to the DOJ—were void[,]" Def.'s Opp'n to Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 5, and therefore the court has

subject matter jurisdiction over the plaintiff's claim, see id. The plaintiff submitted a reply to the defendant's opposition on September 24, 2025, arguing that "the determination by the [IRS's] Independent Office of Appeals should be given effect and the United States should be estopped from opposing its own client and its own client's determination." Pl.'s Reply to Opp'n to Dismiss Counterclaim for Lack of Jurisdiction at 2.

## II. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual

allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation modified).

"A lawsuit becomes moot—and is therefore no longer a '[c]ase' or '[c]ontroversy'—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Almaqrami v. Pompeo, 933 F. 3d 774, 779 (D.C. Cir. 2019) (citation modified). And a "court may appropriately dispose of a case under 12(b)(1) on mootness grounds," when mootness results in the loss of subject matter jurisdiction by the court. Mykonos v. United States, 59 F. Supp. 3d 100, 103-04 (D.D.C. 2014) (citation modified). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Lewis v. Becerra, 111 F.4th 65 (D.C. Cir. 2024). Moreover, "[a] case is moot if a decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Pub. Citizen, Inc. v. FERC, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (citation modified). This can occur when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." Schmidt v. United States, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (citation modified).

**B. Federal Rule of Civil Procedure 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) authorizes a party to move for dismissal of a complaint for "improper venue[.]" Fed. R. Civ. P. 12(b)(3). In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3), a court must "accept[ ] the plaintiff['s] well-pled factual allegations regarding venue as true, . . . draw[ ] all reasonable inferences from those allegations in the plaintiff['s] favor, and . . . resolve[ ] any factual conflicts in the plaintiff['s] favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (citation modified).

In assessing a Rule 12(b)(3) motion, a court may "consider material outside of the pleadings." Taylor v. Shinsei, 13 F. Supp. 3d 81, 85 (D.D.C. 2014). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). However, "[t]o prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." Wilson v. Obama, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (internal quotation marks omitted).

## III. ANALYSIS

The Court will first determine whether the plaintiff should be permitted to voluntarily dismiss his complaint. Then, the Court will assess whether the defendant's counterclaims are moot. Finally, because the Court ultimately concludes that the defendant's counterclaims are not moot, the Court will determine what venues are proper for the claims that remain and whether it will transfer any such claim or claims to a different forum.

**A. Whether the Complaint Should Be Voluntarily Dismissed**

The plaintiff argues that "[b]ecause the Internal Revenue Service has abated the civil penalty for tax year 2010, refunded [his] money and released the federal tax lien[,]" his

Complaint is now moot and he is "willing to voluntarily dismiss the Complaint without prejudice." Pl.'s Mot. to Dismiss Compl. ¶¶ 8–9. The defendant responds that "this alleged mootness only arose because the IRS—without authority—abated [the plaintiff's] penalties" and, because it acted without authority to do so, "the IRS's actions are void." Def.'s Opp'n to Mot. to Dismiss Compl. at 1. The defendant also argues that the plaintiff's request to dismiss his Complaint is an "attempt at forum shopping[,which] means the motion is not filed in good faith, and the United States would suffer prejudice." Id.

Pursuant to Rule 41(a)(2), "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). "[A] very significant number of courts have followed the traditional principle recognized by the federal courts that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit[,]" 9 Wright & Miller's Federal Practice and Procedure § 2364 (4th ed. 2020), and the District of Columbia Circuit generally follows this prevailing principle, see Conafay by Conafay v. Wyeth Lab'ys, a Div. of Am. Home Prods. Corp., 793 F.2d 350, 353 (D.C. Cir. 1986) (holding that dismissals under Rule 41(a)(2) are "generally [ ] granted in the federal courts unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage"). But "the D.C. Circuit has never defined what, exactly, constitutes legal prejudice for purposes of Rule 41(a)(2)." N.S. ex rel. S.S. v. District of Columbia, 272 F. Supp. 3d 192, 197 (D.D.C. 2017).

A district court determines the existence of legal prejudice "by considering four factors: (1) the defendants' effort and expense in preparation for trial; (2) excessive delay or lack of

diligence on the plaintiff's part in prosecuting the action; (3) the adequacy of the plaintiffs' explanation for voluntary dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made." In re Federal Nat'l Mortg. Ass'n Sec., Derivative, ERISA Litig., 725 F. Supp. 2d 169, 176 (D.D.C. 2010), rev'd and remanded sub nom. Kellmer v. Raines, 674 F.3d 848 (D.C. Cir. 2012). Several courts in this Circuit have also required that voluntary dismissals be "sought in good faith." See In re Vitamins Antitrust Litig., 198 F.R.D. 296, 304 (D.D.C. 2000); Mittakarin v. InfoTran Sys., Inc., 279 F.R.D. 38, 41 (D.D.C. 2012); In re Federal Nat'l Mortg. Ass'n Sec., 725 F. Supp. 2d at 176; N.S. ex rel. S.S., 272 F. Supp. 3d at 197. For the following reasons, the Court finds that the defendant will not suffer legal prejudice from the plaintiff's voluntary dismissal of his Complaint and that the plaintiff is acting in good faith.

First, the defendant's efforts and expenses incurred in response to the plaintiff's Complaint are relatively limited. The defendant has filed several briefs and counterclaims, but a substantial amount of the defendant's efforts have been useful both in defending against the plaintiff's Complaint and for prosecuting its own counterclaims. Thus, to the extent that the defendant has made any "efforts preparing for trial," such efforts "do not support a finding of legal prejudice because the preparations made in this case can be used in" pursuing its own counterclaims. In re Fed. Nat'l Mortg. Ass'n Sec., 725 F. Supp. at 177.

Second, the plaintiff has not caused "excessive delay or [exhibited] lack of diligence" in the prosecution of his claims. The plaintiff received a Certificate of Release of Federal Tax Lien from the IRS on July 9, 2025, see Pl.'s Mot. to Dismiss Counterclaim for Lack of Jurisdiction, Ex. 5 ("Certificate of Release of Federal Tax Lien"), ECF No. 22-5, and submitted his motion to dismiss less than two months later on September 5, 2025, Pl.'s Mot. to Dismiss Compl. at 2; see also John M. Crawley, L.L.C. v. Trans-Net Inc., 394 Fed. Appx. 76, 79 (5th Cir. 2010) (finding

that dismissal after seven months had elapsed between removal and a motion to dismiss did not prejudice the defendant).

Third, the plaintiff has provided an adequate explanation for dismissal, which is that he has, at least partially, "recovered what he asked for in his complaint." Pl.'s Reply to Opp'n to Dismiss Compl. ¶ 5. Specifically, the plaintiff has received a return of the penalty he paid, which was the very reason why he filed his Complaint. See Pl.'s Mot to Dismiss or Transfer Counterclaim, Exs. 1, 2, 3, 4 ("Refund Notices for 2010, 2011, 2012, and 2015"), ECF Nos. 21-1, 21-2, 21-3, 21-4; Certificate of Release of Federal Tax Lien.

Finally, the litigation of this matter is at an early enough stage that a grant of dismissal would not cause legal prejudice to the defendant, as there have been no hearings and there are no pending motions for summary judgment.

The defendant nevertheless argues that "[the plaintiff's] request for an order of dismissal of his Complaint is not done in good faith." Def.'s Opp'n to Mot. to Dismiss Compl. at 3. According to the defendant, the plaintiff "seeks to voluntarily dismiss his suit with the stated goal of invoking a different venue statute to justify transferring this suit back to the Western District of Texas[,]" which it argues is impermissible forum shopping. Id. at 3. But the defendant does not provide any proof of how the plaintiff is forum shopping, other than a general assertion that "[he] 'appears to be seeking a preferred forum for [his] claims.'" Id. at 4 (quoting Mehle v. Trinity Prods., LLC, 131 F. Supp. 3d 857, 860 (D. Minn. 2015). That is unsurprising, given that the plaintiff is seeking to dismiss his claims, not to bring them in "a preferred forum." See id. And even if the plaintiff were planning to re-file his claim in some other forum, as a citizen not residing in the United States, he would still face the same venue hurdle that resulted in the transfer of his claim to this Court. Moreover, unlike plaintiffs who have "offered no

explanation" for dismissal other than a desire to re-file in a preferred district with different substantive law, see Mehle, 131 F. Supp. 3d at 860, the plaintiff here has provided a persuasive, good-faith reason to stop litigating his claim: the penalty assessed against him has been refunded. Accordingly, for the foregoing reasons, the court grants the plaintiff's motion to voluntarily dismiss his claims.

### B. Whether the Defendant's Counterclaims Should Be Dismissed

The plaintiff argues that the defendant's counterclaims are "moot and should be dismissed for lack of subject matter jurisdiction with prejudice[,]" Pl.'s Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 2, and that "the Court should give the Internal Revenue Service's [abatement] determination collateral estoppel effect[,]" id. ¶ 21. According to the plaintiff, the IRS's determination that he had "reasonable cause for filing Forms 3520 late[,]" id. ¶ 19, automatically resolves the counterclaims in his favor, id. ¶¶ 26–27. The defendant responds that its claims are not moot because, under statute and the IRS's internal rules, the IRS did not have the authority to abate the plaintiff's penalties after it granted the DOJ "the exclusive authority to make and approve adjustments to [the plaintiff's] referred tax liabilities." Def.'s Opp'n to Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 4 (quoting IRM 34.8.2.12 (Aug. 5, 2014)); see 26 U.S.C. § 7122(a) ("The Secretary [of the Treasury] may compromise any . . . case arising under the internal revenue laws prior to reference to [DOJ]; and the Attorney General or his delegate may compromise any such case after reference to [DOJ]." (emphases added)). The Court will first assess whether the defendant's counterclaims are moot, and if not, the Court will then assess whether the doctrine of collateral estoppel applies.

#### 1. Whether the Defendant's Counterclaims are Moot

When the IRS refers a case to the DOJ, the IRS loses its ability to compromise that case. Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 321 (1996); see also 26 U.S.C. § 7122(a) ("The

Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."). Here, the IRS "referred the [tax penalty issues that are the subject of defendant's counterclaims] to the [DOJ] in January 2025." Am. Counterclaim ¶ 13. "Once a tax matter is referred to the [DOJ], only the Attorney General or a person to whom authority has been delegated may settle the matter." Int'l Paper Co., 36 Fed. Cl. at 321 (emphasis added) (internal quotation marks and citation omitted); see also Inverworld Ltd. v. Comm'r, No. 98-1257, 2001 WL 1489101, at *1 (D.C. Cir. Oct. 16, 2001) ("The Attorney General, not the Internal Revenue Service, has express authority to settle tax disputes that have been referred to DOJ for litigation." (citing 26 U.S.C. § 7122(a))). The IRS's Internal Revenue Manual echoes the Int'l Paper Co. ruling. IRM 34.8.2.12 ("Any abatement of unpaid tax made by the Service for a liability that has been referred to Justice must be authorized by Justice or it will be void."). According to the defendant, the DOJ did not authorize the IRS's January 2025 abatements in the plaintiff's case. Def.'s Opp'n to Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 1. Thus, as the defendant correctly notes, because "the purported abatements occurred after referral to the DOJ, the IRS's actions have no legal effect and are immaterial to this suit." Id. at 5 (emphasis in original). The abatement, therefore, does not moot the defendant's counterclaims.[2]

The plaintiff argues that the defendant's counterclaims are, if not moot, "prudentially moot." Pl.'s Reply to Opp'n to Dismiss Counterclaim for Lack of Jurisdiction at 4. Prudential mootness is an equitable doctrine that grants discretion to courts to grant relief when "a

---

[2] Indeed, one of the defendant's counterclaims is to recover the alleged "erroneously 'abated'" refund. Am. Counterclaim at ¶ 20.

controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Com. of U.S. v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980). The IRS and the DOJ agree that the plaintiff's abatement is void, and therefore the DOJ is not in "direct conflict with its own client[,]" the IRS. Pl.'s Reply to Opp'n to Dismiss Counterclaim for Lack of Jurisdiction at 2. And, the IRS further agrees with the DOJ that its finding of reasonableness is void. Thus, although prudential mootness is a flexible "mélange of doctrines," it is not applicable here and does not moot the defendant's counterclaims. See Am. Fed'n of Gov't Emps. v. U.S. Dep't of Educ., No. 25-cv-3553 (CRC), 2025 WL 3123707, at *10 (D.D.C. Nov. 7, 2025) (describing prudential mootness and listing cases in which it has been applied).

**2. Whether Collateral Estoppel Compels Dismissal of the Defendant's Counterclaims**

The plaintiff also argues that the Court "should give the Internal Revenue Service's [abatement] decision collateral estoppel effect." Pl.'s Mot. to Dismiss Counterclaim for Lack of Jurisdiction at 5. But collateral estoppel only "bars successive litigation of an issue of fact or law" if the issue is actually litigated and "determined by a valid, final judgment on the merits[.]" Capitol Servs. Mgmt., Inc. v. Vesta Corp., 933 F.3d 784, 794 (D.C. Cir. 2019). As discussed above, because the IRS did not have the authority to abate the plaintiff's civil tax penalties, the abatement decision was not a "valid, final judgment on the merits" and, therefore, collateral estoppel does not apply.[3] See id.

[3] Moreover, the plaintiff's collateral estoppel argument is an affirmative defense, not a challenge to subject matter jurisdiction. See Fed. R. Civ. P. 8(c); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) (determining that collateral estoppel, as a form of "[p]reclusion, . . . is not a jurisdictional matter").

**C. Whether the District of the District of Columbia Is a Proper Venue for the Defendant's Counterclaim**

Having determined that the defendant's counterclaims are not moot, the Court now turns to the plaintiff's motion to dismiss or transfer the defendant's counterclaim on improper venue grounds under 28 U.S.C. § 1406. See Pl.'s Mot. to Dismiss or Transfer Counterclaim at 1, 4. As already noted, this case was transferred from the Western District of Texas to this Court because the transferor court concluded that, for purposes of the plaintiff's claim against the government, venue was proper only in the District of the District of Columbia because of the plaintiff's status as a United States citizen residing outside of the United States. Order (May 6, 2025) at 4–7. However, the Court has now determined that those claims must be dismissed and the only remaining claims are the defendant's counterclaims, which are governed by different substantive venue provisions.

The plaintiff, who is the counter-defendant in regards to the counterclaim, moves for dismissal or transfer for improper venue under 28 U.S.C. § 1406(a), or for discretionary transfer of venue "in the interest of justice" under 28 U.S.C. § 1404(a). Both statutes require that an action may only be transferred to any "district or division" in which the action could have been brought in the first instance. See 28 U.S.C. §§ 1404(a), 1406(a). Here, because the Court has dismissed the plaintiff's claims, the only remaining claims are the government's counterclaims against the plaintiff/counter-defendant. Accordingly, the Court must assess where the counterclaims could have been brought without regard to the plaintiff's now-dismissed claims and then determine where is the appropriate venue accordingly. See New Mexico ex rel. Energy and Minerals Dep't, Mining and Mins. Div. v. U.S. Dep't of Interior, 820 F.2d 441 (D.C. Cir.

1987) (affirming voluntary dismissal of the plaintiff's claim and re-assessing proper venue based solely on the defendant's remaining counterclaim).

**1. The Parties' Arguments Based on 28 U.S.C. § 1396**

The defendant argues, and the plaintiff does not contest, that "[w]hen the United States is the plaintiff, [28 U.S.C.] § 1396 controls" for venue purposes. Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 9; see also Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 4 ("28 U.S.C. section 1396[ is] the governing venue statute[.]"). Section 1396 provides that "[a]ny civil action for the collection of internal revenue taxes[4] may be brought [1] in the district where the liability for such tax accrues, [2] in the district of the taxpayer's residence, or [3] in the district where the return was filed." 28 U.S.C. § 1396.

The defendant argues that the first clause, designating venue to be in the district where the liability for the tax accrues, makes venue proper in the District of Utah because the plaintiff/counter-defendant's liability accrued upon his failures to mail a Form 3520 to the Internal Revenue Service Center in Ogden, Utah for the subject years. See Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 10–11. The plaintiff argues in response that "any liability for the penalties accrued in the Western District of Texas" because he mailed his returns from an address in El Paso and "mailing the returns is the equivalent of filing the returns under I.R.C. § 7502[.]" Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 6.

Under the second clause of § 1396, venue is also proper in the "district of the taxpayer's residence." The defendant, relying on the transferor court's decision, argues that "[the plaintiff's] residence, as a U.S. citizen living abroad, is the District of Columbia." Def.'s Opp'n

---

[4] Although the issue in the counterclaim is the collection of a penalty rather than the "collection of internal revenue taxes," § 1396 still applies as the penalty the government seeks to collect is to be treated "in the same manner as [a] tax[.]" 26 U.S.C. § 6039F(c)(1)(B).

to Mot. to Dismiss or Transfer Counterclaim at 9; see Order (May 6, 2025) at 4–6. The plaintiff/counter-defendant, on the other hand, argues that the shift in the controlling venue statute—from § 1346 for his now-dismissed claims[5] to 28 U.S.C. § 1396 for the government's counterclaims—escapes the transferor court's "previous decision treating [him] as a resident of the District of Columbia[.]" Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 3.

Lastly, venue under § 1396 is appropriate "in the district where the return was filed." The defendant/counter-plaintiff contends that the plaintiff/counter-defendant's returns were "filed" only upon its receipt at the Service Center in Ogden, Utah. Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 10–11. On the other hand, the plaintiff/counter-defendant argues that the returns were filed in the Southern District of Texas because he mailed his returns to an address in Houston, Texas "as directed by the Internal Revenue Service." Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 5; see also Powell Letter at 2.

**2. Whether 28 U.S.C. § 1391 Also Governs Venue**

The parties both argue that § 1396 is the uniquely controlling venue statute. See Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 9 ("[w]hen the United States is the plaintiff, § 1396 controls"); Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 4 ("28 U.S.C. section 1396[ is] the governing venue statute[.]"). But § 1391, the general venue statute, applies "[e]xcept as otherwise provided by law[.]" 28 U.S.C. § 1391(a).[6] And, under § 1391, "a

[5] The plaintiff incorrectly states that his original claims were governed by § 1391, Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 3, an argument that was rejected by the transferor court, which instead ruled that his claims were governed by § 1346. Section 1346's application triggered § 1402(a)(1)'s exclusive venue provision, pursuant to which the plaintiff's original claim was to "be prosecuted only" in "the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1) (emphasis added). This exclusive venue provision required that his claims be transferred to this District, where his residency was determined to exist under 26 U.S.C. § 7701(a)(39)(A). Section 1402(a)(1)'s restrictive venue language precluded the operation of § 1391's permissive venue grants for the plaintiff's claims.

[6] Even though neither party advances a venue argument based on § 1391, it is appropriate to assess venue under § 1391 pursuant to Kamen v. Kemper Financial Services, Inc., 500 U.S. 90 (1991). The venue issue is clearly before
(continued . . .)

defendant not [a] resident in the United States[,]" like the plaintiff/counter-defendant here, "may be sued in any judicial district[.]" 28 U.S.C. § 1391(c)(3). Since § 1391 applies "[e]xcept as otherwise provided by law[,]" the question becomes whether § 1396 displaces § 1391. 28 U.S.C. § 1391. For the following reasons, the Court finds that it does not.

First, the text of § 1396 readily supports a permissive interpretation. Sections 1391 and 1396 each use the permissive term "may." Unlike § 1402, which governed the plaintiff/counter-defendant's now-dismissed claims against the government, neither statute uses exclusive language like "must," "shall," or "only". See 28 U.S.C. § 1402(a)(1) ("Any civil action . . . against the United States . . . may be prosecuted only . . . in the judicial district where the plaintiff resides[.]" (emphasis added)). If Congress intended to make § 1396 preclusive of § 1391, it could have done so by use of the restrictive language imposed by § 1402. See Otter v. Salazar, 718 F. Supp. 2d 62, 64 (D.D.C. 2010) ("Because the ESA venue provision is written with a permissive 'may,' rather than a mandatory word such as 'must' or 'shall,' this lawsuit is clearly not restricted to the District of Columbia[.]"). And other district courts that have directly assessed whether § 1396 is preclusive have held that it is not:

> 28 U.S.C. § 1396 contains merely a permissive grant of venue in cases in which the United States is attempting to collect internal revenue taxes, and does not contain a proscription against bringing actions in other than the enumerated districts when a statute provides an independent basis for venue[,] e.g., 26 U.S.C. § 7403. To hold that 28 U.S.C. § 1396 is mandatory and does restrict venue in this type of suit to the districts specified therein would substantially emasculate the efficacy of § 7403 actions and would in many instances, preclude the United States from the enforcement and collection of internal revenue taxes under the liens statutorily created in the Internal Revenue Code.

---

(. . . continued)
the Court and both parties have had the opportunity to advance their respective positions. And, under Kamen, "once an issue or claim is properly before a court, the court is not limited to the particular legal theories advanced by the parties but retains the independent power to identify and apply the proper construction of governing law." Id. at 91.

United States v. Stone, 59 F.R.D. 260, 264 (D. Del. 1973); see also United States v. First Midwest Bank, No. 94 C 7365, 1995 WL 447762, at *2 (N.D. Ill., July 21, 1995) ("On their face, §§ 1391 and 1396 appear capable of co–existence[.]").

As already noted, § 1396 authorizes venue in the district where (1) the defendant holds residence, (2) the return was filed, or (3) the tax (or penalty) accrued. If this in fact was the only applicable venue provision, it is conceivable that in certain cases there could be a "venue gap"—a situation in which no suitable venue exists. For instance, cases involving a non-resident citizen, like the plaintiff/counter-defendant, who did not file their taxes at all and whose tax liability may have accrued outside of any judicial district, such as the payment of wages to the taxpayer outside of the United States, would occasion an unbridgeable venue gap under the parties' understanding of § 1396.[7] Because "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other[,] . . . in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap." Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193,

[7] The government argues that a hypothetical non-resident citizen would hold residence in the District of Columbia under the "residency rule" which the transferor court found "applies in a tax penalty refund suit when determining 'the judicial district where the plaintiff resides.'" Order (May 6, 2025) at 7. But, crucially, this residency rule only applies to parties who are plaintiffs. This is because "the provisions in Title 28 governing a court's jurisdiction to hear taxpayer suits"—that is, §§ 1346 and 1402 suits—"are made part of Title 26 by cross-reference," Order (May 6, 2025) at 7, and the residency rule applies only "[w]hen used in this title [(Title 26)]," 26 U.S.C. § 7701(a). Although the government's tax claim may be brought under Title 26, the relevant venue provision governing tax suits by the government is § 1396, which is part of Title 28. The government has offered no support for the idea that § 1396 has any applicability to Title 26, and the Court has found no connection, via cross-reference or otherwise, between § 1396 of Title 28 and the residency rule found in Title 26.

This is unsurprising given the general purpose of venue statutes: to protect defendants. See Leroy v. Great Western United Corp., 443 U.S. 173, 183–84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." (emphasis added)). Taxpayer plaintiffs suing the government under § 1346 do not receive this protection, but taxpayer defendants under § 1396 do. Because venue for the government's claims are governed by 28 U.S.C. § 1396, which is not incorporated into Title 26 as §§ 1346 and 1402 are, the residency rule of Title 26 does not govern the plaintiff/counter-defendant's residence.

203 (2000) (quoting Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 n.8 (1972)).

The ordinary meaning of the statute,[8] its treatment in the case law, and prudential concerns against the creation of a venue gap all support the position that § 1396 contains permissive grants of venue that do not preclude the operation of the general venue statute. Accordingly, venue for the government's claim against the plaintiff/counter-defendant as a non-resident exists in "any judicial district." 28 U.S.C. § 1391(c)(3). Therefore, because this Court is not a "wrong division or district" under 28 U.S.C. § 1406(a), the Court must deny the plaintiff/counter-defendant's motion to dismiss for improper venue. But, since venue is possible in "any judicial district," the Court must decide whether the case should be transferred to another district under 28 U.S.C. § 1404(a).

**D. Whether the Defendant's Counterclaims Should Be Transferred to a Different Venue**

The plaintiff/counter-defendant has asked the Court to transfer the counterclaims to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). Pl.'s Mot. to Dismiss or Transfer Counterclaim at 6. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all

[8] At least one line of cases has interpreted substantially similar permissive language to be exclusive of portions of the general venue statute. This line of cases interprets 28 U.S.C. § 1400(b) (also referred to as the "Patent Venue Statute") to be the exclusive determinant of venue in patent infringement actions, "not to be supplemented by" the general venue provisions in § 1391. Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 229 (1957); see also Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561 (1942); TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258 (2017). However, this exclusive interpretation relied less on the text of § 1400(b) and more on its history and legislative intent—unique features which do not apply to § 1396. See Fourco Glass, 353 U.S. at 225 (describing how the Stonite Court found § 1400(b) to be exclusive only "[a]fter reviewing the history of, and the reasons and purposes for, the adoption by Congress" of the Patent Venue Statute) and Brunette Mach. Works, 406 U.S. at 712 ("The analysis in [Stonite and Fourco] rested heavily on the legislative history of § 1400(b).").

parties have consented." 28 U.S.C. § 1404(a). The decision to transfer a case is discretionary, and a district court must conduct "an individualized, 'factually analytical, case-by-case determination of convenience and fairness.'" New Hope Power Co. v. U.S. Army Corps of Eng'rs, 724 F. Supp. 2d 90, 94 (D.D.C. 2010) (quoting Sec. & Exch Comm'n v. Savoy Indus., Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)). The moving party "bears the burden of establishing that the transfer of th[e] action is proper." Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001) (citation omitted).

The Court has already determined (1) that the relevant actions for its venue analysis are the counterclaims brought by the government and (2) that the counterclaims could have been brought in any judicial district, including the Western District of Texas. Now, the Court must

> consider[] both the private interests of the parties and the public interests of the courts[.] The private interest considerations include: (1) the plaintiff['s] choice of forum, unless the balance of convenience is strongly in favor of the defendant[]; (2) the defendant['s] choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses[;] . . . and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee[ ] [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'ship, 24 F. Supp. 2d 66, 70 (D.D.C. 1998) (citation omitted).

Consideration of the private interest factors weigh in favor of transfer to the Western District of Texas. First, neither the claims nor the parties hold any meaningful relationship to the District of Columbia, which is particularly the case regarding the plaintiff/counter-defendant, who has "always lived in Mexico." Compl. ¶ 9. Second, there is no indication that the plaintiff/counter-defendant has ever visited or engaged in any activities in the District of Columbia. Third, all relevant events occurred in Texas—the plaintiff/counter-defendant

"deposited the gifts he received from his father in [his] bank account in El Paso, Texas[,]" Compl. ¶ 12; retained the services of a tax specialist (Mr. Alfonso Soto) whose office was located in El Paso, id. ¶ 18; both prepared—with the assistance of Mr. Soto—and mailed his taxes in El Paso, id. ¶¶ 18–25; received his notice of penalty in El Paso, Powell Letter at 1; and had his untimely Forms 3520 mailed from Mr. Soto's office in El Paso, Soto Letter at 1.

Although the government contends that the alleged liabilities accrued in Ogden, Utah and that the overdue Forms 3520 were filed in Ogden, Utah, Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 11, the government does not argue that any relevant events occurred in the District of Columbia. The government also argues that because the plaintiff/counter-defendant does not reside in El Paso, "his preference should be given little deference." Id. at 13. Nonetheless, it would be substantially more convenient for the plaintiff/counter-defendant to defend against the counterclaims in El Paso rather than doing so in the District of Columbia. And, although "[the plaintiff/counter-defendant] . . . does not reside in El Paso, Texas[,]" id. at 13, he "resides in Juarez, Chihuahua, Mexico[,]" Pl.'s Mot. to Dismiss or Transfer Counterclaim at 2, which is located only "approximately 7 miles from the federal courthouse in El Paso[,]" id. Conversely, he lives 1,964 miles from the federal courthouse in the District of Columbia, id. at 3, so El Paso is a substantially more convenient venue for the plaintiff/counter-defendant to defend against the counterclaims.

The government also argues that the plaintiff/counter-defendant must "demonstrate (through affidavits or otherwise) what [Mr. Soto, his] non-resident witness[,] will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." Def.'s Opp'n to Mot. to Dismiss or Transfer Counterclaim at 13 (quoting Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 33

(D.D.C. 2002). Despite the fact that "when defendants do not indicate that their third-party witnesses will be unwilling to attend trial voluntarily, the court may disregard[] the availability of compulsory process as a factor," Shapiro, Lifschitz & Schram, 24 F. Supp. 2d at 71 (quotation marks and citation omitted), the plaintiff/counter-defendant has indicated that Mr. Soto "is a key witness in this case" and that he "does not know whether Soto is willing to voluntarily travel to the District of Columbia[,]" Pl.'s Reply to Opp'n to Dismiss or Transfer Counterclaim at 8. He has, however, adequately established that Mr. Soto's "testimony will be directly relevant to the single controlling issue in this case, that is, whether [the plaintiff/counter-defendant] had reasonable cause for filing Forms 3520 late." Id. at 7–8. As a witness central to the fair adjudication of the counterclaims, Mr. Soto's convenient access to the court is a factor the Court heavily considers in assessing the appropriate venue. Based on this record, the private interest factors therefore strongly favor the Western District of Texas as the most proper venue.

The public interest factors, "the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum, the relative congestion of the courts, and the local interest in deciding local controversies at home[,]" Davis v. MTN Irancell Telecomms. Servs. Co., No. 22-cv-829 (RDM), 2023 WL 2755415, at *2 (D.D.C. Mar. 30, 2023) (internal quotation marks and citations omitted), do not alter the conclusion that the Western District of Texas is the most appropriate venue. Indeed, as applied here, these public interest factors "are of little moment" because "[a]ll federal courts are assumed to be conversant in federal law, . . . neither forum has a local interest in the case[, and] the relative congestion of the dockets does not cut decisively either way." Id. at *5 n.8 (internal citation omitted); see Def.'s Opp'n to Pl.'s Mot. to Dismiss or Transfer Counterclaim at 14 (noting that "[a]ccording to the latest statistics for federal judicial caseloads, the median filing-to-disposition period" for the District of the

District of Columbia is 7.5 months and for the Western District of Texas is 7.8 months); see also Smith v. Yeager, 234 F. Supp. 3d 50, 59 (D.D.C. 2017) (Walton, J.) (finding that a difference of 2.8 months in a filing-to-disposition period "is not that significant.").

Accordingly, weighing the private and public interest factors, the Court concludes that it must transfer the government's counterclaims against the plaintiff/counter-defendant to the Western District of Texas.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that is must (1) grant the plaintiff's motion to voluntarily dismiss his Complaint; (2) grant in part and deny in part the plaintiff's motion to dismiss the counterclaims for improper venue or, in the alternative, to transfer venue, and (3) deny the plaintiff's motion to dismiss the counterclaims.

**SO ORDERED** this 4th day of September, 2026.[9]

REGGIE B. WALTON
United States District Judge

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.